UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JASON EUGENE MINCY, | : | Case No. 1:20-cv-822 |
| Plaintiff, | : | |
| vs. | : | District Judge Michael R. Barrett |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| HAMILTON COUNTY JUSTICE CENTER, *et al.*, | : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATION[1]

This case is before the Court upon Defendants Kevin Wade, Shenessa Murrell, and Steven Tannreuther's Motion for Summary Judgment (Doc. #94), Plaintiff's "Declaration …, Memorandum Opposition to the Motion for Summary Judgement" (Doc. #96), and Defendants' Reply (Doc. #98).

**I. Background**

In October 2020, Plaintiff, a former inmate at the Hamilton County Justice Center ("HCJC"), brought this civil rights action pursuant to 42 U.S.C. § 1983. Upon discovering the names of Defendants Kevin Wade, Shenessa Murrell, and Steven Tannreuther, Plaintiff filed an Amended Complaint.[2] (Doc. #51).

Plaintiff alleges that on April 24, 2020, he was moved to the only cell in the pod with tinted windows that made it so that he could not see outside. *Id.* at 356. When Plaintiff asked to be

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Plaintiff has not yet discovered the full name of the fourth Defendant, Nurse Jane Doe. *See* Doc. #51, *PageID* #353.

moved, Defendant Wade told him "No." *Id.* When "they called 'quiet time,'" Plaintiff said that he was going to "refuse lock" and they could put him "in the hole (isolation)." *Id.*

According to Plaintiff, three to four corrections officers (c/o's) then came into the sallyport where Plaintiff was speaking to another c/o. *Id.* They told him that he was going into the cell "the easy way or the hard way …." *Id.* Plaintiff indicates that he calmly laid down on his stomach and put his hands behind his back. *Id.* He was then handcuffed and picked up by at least three of the four c/o's. *Id.* at 357. The c/o's rushed Plaintiff towards the c-pod door, but Plaintiff stuck his foot out so that he did not hit the closed door. *Id.* Plaintiff alleges that the c/o's became more aggressive once they opened the door and took him into the cell. *Id.* Once in the cell, Plaintiff alleges that Defendant Wade "slammed [him] on the metal rack" and then "landed his knee on [Plaintiff's] back very hard where he kept it." *Id.* Defendant Tannreuther put his knee on Plaintiff's neck and "whacked [him] with a hard object on the right side of [his] head which has left a knot …." *Id.* At the same time, another c/o twisted Plaintiff's hands, leaving bruises for months. *Id.* Plaintiff appears to allege that this was "most likely" Defendant Wade, whose knee was still on Plaintiff's back. *Id.* at 357-58. Plaintiff states that the third c/o, who did not have a nametag, twisted his feet. *Id.* at 358. The fourth c/o, who also did not have a nametag, stood by the cell door. *Id.* Plaintiff claims that as a result of the alleged assault, he had a "huge knot" on the right side of his head, bruises on his wrists, and pain in his back and feet. *Id.* Plaintiff also alleges that his "back was bleeding from being sliced by a sharp object which [he] presume[s] was a key …." *Id.*

Plaintiff alleges that after he was uncuffed, he asked to see a nurse and sergeant to report the abuse. *Id.* According to Plaintiff, Nurse "Jane Doe" entered the pod, made a joke to the c/o, did not enter his cell to evaluate his injuries, and left after saying that "nothing was wrong" with

him. *Id.* Plaintiff alleges that Defendant Murrell stood at his cell door during this time. *Id.* According to Plaintiff, when he told Defendant Murrell what happened, she told him that he was lying. *Id.* at 359. He told her to review the cameras, but she never did. *Id.* Plaintiff claims that "they never wrote the incident up in the logbook/logsheet," he was never written up, and he did not receive a disciplinary ticket. *Id.*

Plaintiff asserts that he is "suing for assault by officers, abuse of power, abuse of authority, [perjury], covering up an injury to protect officers, violation of civil rights, inappropriate supervision, emotional distress, pain [and] suffering, excessive use of force, I.C.B., negligence, and battery." *Id.*

Plaintiff alleges that he "wrote the incident up on a grievance form properly and put it in the inmate [grievance] box …." *Id.* at 352. He did not receive a response back. *Id.* Plaintiff indicates that this is not the first time that he has written a grievance and not received a response. *Id.*

**II.     Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Additionally, this initial burden may be satisfied by the moving party "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has

3

no evidence to support an essential element of his or her case." *Barnhart v. Pickrel Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

The burden then shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Here, in opposing summary judgment, the non-moving party cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Indeed, unverified pleadings and self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013).

Finally, in ruling on a motion for summary judgment, the court is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. *See id*.

**III.    Discussion**

Defendants contend that they are entitled to summary judgment because (1) Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") before filing his action in this Court; and (2) Plaintiff has failed to develop a record that supports his claim. (Doc. #94). Defendants support their Motion for Summary Judgment with the declaration of Assistant Office Manager and Grievance Coordinator for the Hamilton County Sheriff's Office

4

William Wietmarschen and the Hamilton County Sheriff's Office Inmate Grievance Procedure. (Doc. #81).

Plaintiff opposes Defendants' Motion, asserting that he filled out a grievance form the day after the alleged incident and that he has been attempting to obtain the camera footage from the incident. (Doc. #96).

### A. Exhaustion of Administrative Remedies

Defendants first move for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (Doc. #94, *PageID* #s 548-49). As failure to exhaust administrative remedies is "an affirmative defense under the PLRA[,]" Defendants bear the burden of proof on this issue. *Jones v. Bock*, 549 U.S. 201, 216, 127 S. Ct. 910 (2007); *see also Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) ("[T]he failure to exhaust 'must be established by the defendants.'") (quoting *Napier v. Laurel Cnty, Ky.,* 636 F.3d 218, 225 (6th Cir. 2011)). Thus, "[w]hen the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012)); *see also Blissit v. Fiquiris*, 345 F. Supp. 3d 931 (S.D. Ohio 2018) (granting summary judgment based upon inmate's failure to comply with Ohio's grievance process for excessive force claim, discussing burden of proof).

Under the PLRA, "a prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In discussing the applicability of the PLRA exhaustion requirement, the Supreme Court

5

has made clear that it "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983 (2002). Further, such exhaustion is "mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.

In order "[t]o properly exhaust a claim, prisoners must tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review, and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller,* 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo,* 548 U.S. 81, 90 (2006)). Proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules" so that the adjudicative system can function effectively. *Woodford*, 548 U.S. at 90-91.

Despite this, the PLRA only requires prisoners to exhaust all "available" administrative remedies. 42 U.S.C. § 1997e(a). Thus, if the administrative remedy is considered unavailable, the requirement to exhaust may be excused. As such, the Supreme Court has identified three situations where an administrative procedure is unavailable to prisoners and is therefore not subject to the exhaustion requirement: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake,* 578 U.S. 632, 643-44 (2016).

6

The inmate grievance process for the HCJC is governed by the Hamilton County Sheriff's Office Inmate Grievance Procedure. (Doc. #81-1); *see also* Doc. #81, Wietmarschen Decl., *PageID* #s 476-77. The HCJC grievance procedure consists of two steps: (1) an initial grievance, and (2) an appeal to an Administrative Captain or Support Service Captain. (Doc. #81-1, *PageID* #s 480-83). The inmate grievance policy states that an inmate may verbally lodge an informal grievance or may file a "Standard Grievance" in writing "within ten (10) days after the event has occurred." *Id.* at 480. If the inmate completes the standard form, he is required to "place the form in the mail box in their housing unit." *Id*. The "Support Service Staff" are to review each grievance and "will record and log all grievances and required Information in the Jail Management System (JMS) and at the direction of the Grievance Coordinator, refer unresolved grievances[3] to the proper department head." *Id.* at 480-81. The date that the grievance is referred to the department head also must be logged in the JMS system. *Id.* at 481. Once received by a department head, the department head must review the grievance, investigate if necessary, and enter a response in the same system. *Id*. After filling out the necessary information, the department head must print two copies—one to be given to the inmate and one to be signed by the inmate and returned to the Classification Specialist. *Id.* The department head "should seek to remedy and shall answer the grievance within ten (10) business days through an informal resolution in which both parties agree verbally on a remedy or through a formal written resolution." *Id*.

The second step of the HCJC grievance process is an appeal. The policy sets forth that process as follows:

> When a grievance cannot be resolved to the inmate's satisfaction by action at the department-head level within ten (10) days, the inmate may file an appeal to the Administrative Captain or Support Service Captain assigned to the Justice Center Complex whose area is

---

[3] Prior to referral to the department head, the inmate grievance policy permits Support Service Staff to attempt to resolve the grievance informally. (Doc. #81-1, *PageID* #480).

7

>affected. The inmate must request the appeal form from the Classification Specialist and file the appeal within ten (10) business dates [sic] of receipt of the original response.

*Id.* at 483.

The grievance policy is contained in the Inmate Handbook, and "[a] portion of the Inmate Handbook explaining how to file a grievance and how to appeal a grievance that was not resolved to the inmate's satisfaction is posted on the walls of housing areas within the Hamilton County Justice Center." (Doc. #81, *PageID* #s 476-77).

Defendants assert that Plaintiff failed to file a grievance relating to the alleged incident on April 24, 2020. (Doc. #94, *PageID* #549). In support, Defendants provided the declaration of Assistant Office Manager and Grievance Coordinator for the Hamilton County Sheriff's Office William Wietmarschen, who is the custodian of records pertaining to the inmate grievance process. (Doc. #811, *PageID* #s 476-77). In his declaration, Mr. Wietmarschen attests that he "performed a search of the Hamilton County Justice Center JMS program for the purpose of locating grievances filed by Jason Eugene Mincy concerning an incident that occurred on or about April 24, 2020. [] That search yielding no results for any grievances filed by Jason Eugene Mincy for an incident occurring on or about April 24, 2020." *Id.* at 477. Defendants argue that there is no issue of material fact that there was an administrative process in place, it was available to Plaintiff, and Plaintiff failed to exhaust that administrative process. (Doc. #94, *PageID* #549). As such, Defendants contend that they are entitled to judgment as a matter of law. *Id.*

In his "Declaration of Jason Eugene Mincy, Memorandum Opposition to the Motion for Summary Judgement," Plaintiff asserts that, as he indicated in his Complaint, he filled out a grievance form on April 25, 2020, and dropped it in the correct box. (Doc. #96, *PageID* #555) (citing Doc. #3, *PageID* #34); *see also* Doc. #51, *PageID* #352. Plaintiff did not receive a response to his grievance. (Doc. #51, *PageID* #352). Plaintiff explains that the HCJC's grievance form is

8

one piece of paper[4] so he does not have a copy of the original form that he completed. (Doc. #96, *PageID* #558). According to Plaintiff, he has submitted grievance forms "on many occasions and most times [he has] never gotten a reply back at all." *Id.* at 559. Plaintiff contends that the HCJC's grievance procedure is "corrupt and not updated like all other jails." *Id.* at 558.

The Sixth Circuit has held that "if the plaintiff contends that he was prevented from exhausting his remedies," the defendant must "present evidence showing that the plaintiff's ability to exhaust was not hindered." *Surles v. Andison*, 678 F.3d 452, 457 n.10 (6th Cir. 2012); *see also Lamb v. Kendrick*, 52 F.4th 286, 295 (6th Cir. 2022) (quoting *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)) ("At the end of the day, someone must carry the burden, and 'it appears that it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion.'"). Similarly to the inmate in *Surles*, Plaintiff asserts that he attempted to exhaust his administrative remedies by filing a grievance, and someone at HCJC interfered with his attempt. (Doc. #96, *PageID* #555); *see Surles*, 678 F.3d at 457-58. Defendants presented no proof that they did not interfere with Plaintiff's ability to exhaust his administrative remedies. Therefore, Defendants are not entitled to summary judgment on this issue.

### B. Record in Support of Plaintiff's Claim(s)

Defendants also contend that Plaintiff has not developed any record evidence demonstrating that he is entitled to relief. (Doc. #94, *PageID* #550). According to Defendants, "Plaintiff conducted virtually no discovery to support his claim. The limited discovery he did conduct reveals no facts to support the allegations he makes in his complaint, allegations he may not now rest on." *Id.*

---

[4] In comparison, Plaintiff explains that the Butler County Jail uses a three-page form (attached white, yellow, and pink). (Doc. #96, *PageID* #559). The inmate submits the white and yellow forms and keeps the pink form as proof he wrote the grievance. *Id.*

In response, Plaintiff asserts that he has attempted to obtain discovery from Defendants but has had difficulty obtaining it. (Doc. #96, *PageID* #s 553-54). He notes that he filed a Motion requesting service by the Marshal (Doc. #90) on January 12, 2024. (Doc. #96, *PageID* #s 553-54). The subpoena seeks video/audio and camera footage from Sheriff Charmaine McGuffey. (Doc. #90).

In their Reply, Defendants argue that the security footage is not a part of the record, and Plaintiff's characterization of what may appear in such footage cannot create a question of fact. Defendants also point to the "sworn testimony" of Defendant Tannreuther "that the cameras that would show Plaintiff claims had not been installed as of the date of the incident." (Doc. #98, *PageID* #567 n. 2) (citing Doc. #93, *PageID* #544).

Plaintiff filed his Motion requesting service by the Marshal before the deadline for discovery (January 31, 2024) and the dispositive motion deadline (February 28, 2024). *See* Doc. #89. The video is relevant to his claims and may support his opposition to Defendants' Motion for Summary Judgment. Although Defendant Tannreuther indicated that there were not cameras in the pod, Defendant Murrell, in her responses to Plaintiff's interrogatories, stated that "there are cameras in the sally port and inside of the pods where the inmates are celled." (Doc. #74, *PageID* #451).

In light of the Court's Order granting Plaintiff's Motion requesting service by the Marshal (Doc. #100), the undersigned recommends **DENYING** Defendants' Motion for Summary Judgment on this issue without prejudice to renewal upon Plaintiff obtaining the requested video (or receiving a response that the requested video does not exist). Plaintiff is **ORDERED** to file a notice with the Court upon receiving a response to his subpoena within seven (7) days of receiving such response. The Court will then set an amended schedule regarding dispositive motions.

**IT IS THEREFORE RECOMMENDED THAT**:

Defendants Kevin Wade, Shenessa Murrell, and Steven Tannreuther's Motion for Summary Judgment (Doc. #94) be **DENIED**.

**IT IS THEREFORE ORDERED THAT**:

Plaintiff shall file a notice with the Court upon receiving a response to his subpoena within seven (7) days of receiving such response.

July 29, 2024

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

11

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).