# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| JASON EUGENE MINCY, | : Case No. 1:20-cv-822 |
| Plaintiff, | : |
| vs. | : District Judge Michael R. Barrett |
| | : Magistrate Judge Peter B. Silvain, Jr. |
| HAMILTON COUNTY JUSTICE CENTER, *et al.*, | : |
| Defendants. | : |

## REPORT AND RECOMMENDATION[1]

This case is before the Court upon Defendants Kevin Wade, Shenessa Murrell, and Steven Tannreuther's Motion for Summary Judgment (Doc. #112), Plaintiff's Response in Opposition (Doc. #116), and Defendants' Reply (Doc. #119).

## I. Background

In October 2020, Plaintiff, a former inmate at the Hamilton County Justice Center ("HCJC"), brought this civil rights action pursuant to 42 U.S.C. § 1983. Upon discovering the names of Defendants Kevin Wade, Shenessa Murrell, and Steven Tannreuther, Plaintiff filed an Amended Complaint. (Doc. #51).

In his Amended Complaint, Plaintiff alleges that on April 24, 2020, he was moved to the only cell in the pod with tinted windows that made it so that he could not see outside. *Id.* at 356. When Plaintiff asked to be moved, Defendant Wade told him "No." *Id.* When "they called 'quiet

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

time,'" Plaintiff said that he was going to "refuse lock" and they could put him "in the hole (isolation)." *Id.*

According to Plaintiff, three to four corrections officers (c/o's) then came into the sallyport where Plaintiff was speaking to another c/o. *Id.* They told him that he was going into the cell "the easy way or the hard way …." *Id.* Plaintiff indicates that he calmly laid down on his stomach and put his hands behind his back. *Id.* He was then handcuffed and picked up by at least three of the four c/o's. *Id.* at 357. The c/o's rushed Plaintiff towards the c-pod door, but Plaintiff stuck his foot out so that he did not hit the closed door. *Id.* Plaintiff alleges that the c/o's became more aggressive once they opened the door and took him into the cell. *Id.* Once in the cell, Plaintiff alleges that Defendant Wade "slammed [him] on the metal rack" and then "landed his knee on [Plaintiff's] back very hard where he kept it." *Id.* Defendant Tannreuther put his knee on Plaintiff's neck and "whacked [him] with a hard object on the right side of [his] head which has left a knot …." *Id.* At the same time, another c/o twisted Plaintiff's hands, leaving bruises for months. *Id.* Plaintiff appears to allege that this was "most likely" Defendant Wade, whose knee was still on Plaintiff's back. *Id.* at 357-58. Plaintiff states that the third c/o, who did not have a nametag, twisted his feet. *Id.* at 358. The fourth c/o, who also did not have a nametag, stood by the cell door. *Id.* Plaintiff claims that as a result of the alleged assault, he had a "huge knot" on the right side of his head, bruises on his wrists, and pain in his back and feet. *Id.* Plaintiff also alleges that his "back was bleeding from being sliced by a sharp object which [he] presume[s] was a key …." *Id.*

Plaintiff alleges that after he was uncuffed, he asked to see a nurse and sergeant to report the abuse. *Id.* According to Plaintiff, Nurse "Jane Doe" entered the pod, made a joke to the c/o, did not enter his cell to evaluate his injuries, and left after saying that "nothing was wrong" with

him. *Id.* Plaintiff alleges that Defendant Murrell stood at his cell door during this time. *Id.* According to Plaintiff, when he told Defendant Murrell what happened, she told him that he was lying. *Id.* at 359. He told her to review the cameras, but she never did. *Id.* Plaintiff claims that "they never wrote the incident up in the logbook/logsheet," he was never written up, and he did not receive a disciplinary ticket. *Id.* Plaintiff claims that "when we look back at the cameras we will see that [he's] been speaking the truth." *Id.* at 358.

Plaintiff asserts that he is "suing for assault by officers, abuse of power, abuse of authority, [perjury], covering up an injury to protect officers, violation of civil rights, inappropriate supervision, emotional distress, pain [and] suffering, excessive use of force, I.C.B., negligence, and battery." *Id.* at 359

Plaintiff alleges that he "wrote the incident up on a grievance form properly and put it in the inmate [grievance] box …." *Id.* at 352. He did not receive a response back. *Id.* Plaintiff indicates that this is not the first time that he has written a grievance and not received a response. *Id.*

In support of his opposition to Defendants' first Motion for Summary Judgment, Plaintiff submitted a Declaration, alleging that "[o]n April 24[,] 2020 at about 1:20 PM [he] was physically assaulted while handcuffed" and "deputy Kevin Wade and deputy Steven Tannreuther used excessive force against [him] and left [him] injured and traumatized …." (Doc. #86, *PageID* #513). He asserts that he still has "an enormous knot on the right [side] of [his] head from being hit with an object by deputy Steven Tannreuther …." (Doc #86, *PageID* #513). He claims that he was refused medical treatment. *Id.* He also alleges that he told Defendant Murrell "at the time of the incident what happened," and "she never not one time went to review the camera footage of

3

said incident to verify [he] was telling the truth nor investigated the deput[ies] about the incident." *Id.*

Plaintiff alleges that he "did nothing to receive the physical force and excessive force" and "not one time was [he] aggressive, hostile, or etc." *Id.* at 515. Plaintiff claims that he was "put in [his] cell for only 14 hours of confinement" following the incident. *Id.*

Defendants initially moved for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies and failed to develop any record evidence demonstrating that he is entitled to relief. (Doc. #94, *PageID* #s 548-50). This Court recommended denying summary judgment for failure to exhaust administrative remedies. (Doc. #101, *PageID* #580). Additionally, this Court recommended denying summary judgment for failure to develop any record evidence demonstrating that Plaintiff is entitled to relief because the Court granted Plaintiff's Motion requesting service by the Marshal of his subpoena seeking camera footage from Sheriff McGuffey. *Id.* at 581. This Court's recommendation was adopted, and Defendants' first Motion for Summary Judgment was denied. (Doc. #106).

In response to the subpoena seeking the camera footage from the day of the alleged incident, Sheriff McGuffey answered that "The Hamilton County Sheriff's Office is not in possession of any document or record responsive to this request." (Doc. #105, *PageID* #591).

In support of their Motion for Summary Judgment, Defendants point to Defendant Kevin Wade's Reply to Plaintiff's First Set of Interrogatories, Request for Admission, and Request for Production of Documents. (Doc. #112, *PageID* #613) (citing Doc. #76, *PageID* #s 458-59). In his Reply, Defendant Wade stated that on April 24, 2020, Plaintiff disobeyed orders to go to his assigned cell and became very aggressive and hostile. (Doc. #76, *PageID* #s 458-59). According to Defendant Wade, three to four officers, including himself, escorted Plaintiff—whose hands were

4

cuffed behind his back—to his cell. *Id.* at 459. Defendant Wade denies that Plaintiff was assaulted or injured and denies that excessive force was used. *Id.*

II.     **Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Additionally, the moving party may satisfy this initial burden "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Barnhart v. Pickrel Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

The burden then shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505 (1986) (quoting Fed. R. Civ. P. 56(e)). Here, in opposing summary judgment, the non-moving party cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Still, the court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002).

While *pro se* litigants are entitled to less stringent standards, this does not alter the litigant's duty to "identify specific facts that can be established by admissible evidence ...." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594 (1972); *Vierguts v. Lucent Techs., Inc.*, 375 F. App'x

482, 485 (6th Cir. 2010) (citing *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006)). Indeed, unverified pleadings and self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013). "An unsworn affidavit cannot be used to support or oppose a motion for summary judgment." *Collazos-Cruz v. United States*, No. 96-5452, 1997 U.S. App. LEXIS 17196, at *7 (6th Cir. July 3, 1997) (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991)). An unsworn declaration will have the same force and effect as a sworn declaration if it is made "in writing of such person which is subscribed by him, as true under penalty of perjury, and dated …." 28 U.S.C. § 1746.

Finally, in ruling on a motion for summary judgment, the court is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S. Ct. 1839 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. *See id*.

### III. Discussion

Defendants contend that they are entitled to summary judgment because Plaintiff has failed to develop a record that supports his claims. (Doc. #112).

Plaintiff opposes Defendants' Motion, asserting factual disputes exist as to the alleged incident.[2] (Doc. #116, *PageID* #621).

---

[2] In his Response, Plaintiff requests to stay the proceedings until he "reach[es his] parent institution in the federal system because [he will] probably … be moving around a lot …." (Doc. #116, *PageID* #622). "[A] District Court has broad discretion in stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520

6

A. **Evidence Permitted to Create a Genuine Issue of Fact**

As an initial matter, Defendants argue that Plaintiff has submitted only one properly sworn declaration. (Doc. #119, *PageID* #630). As noted above, Federal Rule of Civil Procedure 56 provides the procedures for supporting factual positions in the context of summary judgment. Fed. R. Civ. P. 56. A party arguing in support or in opposition of a motion for summary judgment may argue the absence or presence of a genuine disputed fact by "citing to particular parts of materials in the record" or by "showing … that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Additionally, a submitted affidavit or declaration must be made by someone with "personal knowledge [and] set out facts that would be admissible in evidence …." Fed. R. Civ. P. 56(c)(4).

"An unsworn affidavit cannot be used to support or oppose a motion for summary judgment." *Collazos-Cruz*, 1997 U.S. App. LEXIS 17196, at *7 (citing *Dole*, 942 F.2d at 968-69); *Hurick v. McKee*, No. 17-1396, 2018 U.S. App. LEXIS 11154, at *7-8 (6th Cir. Apr. 30, 2018) (finding that plaintiff's unsworn declaration and unverified complaint "could not serve as an opposing affidavit sufficient to rebut defendants' summary judgment motion."). However, an unsworn declaration will have the same force and effect as a sworn declaration if it is made "in writing of such person which is subscribed by him, as true under penalty of perjury, and dated …." 28 U.S.C. § 1746. Specifically, the statute states:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement,

---

U.S. 681, 706-07, 117 S. Ct. 1636 (1997) (citing *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163 (1936)). "[T]he burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Env't Council v. United States Dist. Ct., S. Dist.*, 565 F.2d 393, 396 (6th Cir. 1977). Plaintiff has not met the burden of demonstrating a pressing need for delay. Plaintiff's ability to submit a change of address with the Court, as necessary, undermines any claimed urgency or necessity for a stay. Therefore, this Court recommends that Plaintiff's request to stay the proceedings be denied.

7

> oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)."

*Id.*

Plaintiff has submitted a declaration containing the following language, "I declare under penalty of perjury that the foregoing is true and correct," and that is both dated and signed. (Doc. 86, *PageID* 515). This declaration substantially follows the requirements of 28 U.S.C. § 1746 and, therefore, constitutes admissible evidence for purposes of summary judgment. Accordingly, Plaintiff has pled specific facts that must be addressed by this Court.

However, all other documents submitted by Plaintiff, including the amended complaint and other declarations, are unverified and unsworn. Plaintiff's Opposition to the Motion for Summary Judgment states "I, Jason Eugene Mincy, declare under penalty of perjury." (Doc #96, *PageID* #553). However, this statement is not sufficient to comply with the requirements of 28 U.S.C. § 1746. Because these documents do not comply with the requirements of either Rule 56 or 28 U.S.C. § 1746, they cannot be considered by the Court in ruling on the motion for summary judgment.

    **B.**    **Excessive Force**

Plaintiff brings an Eighth Amendment excessive force claim against Defendants Wade and Tannreuther. Defendants contend that Plaintiff has not developed any record evidence demonstrating that he is entitled to relief.

8

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "Although prison discipline may require that inmates endure relatively greater physical contact, the Eighth Amendment is nonetheless violated if the 'offending conduct reflects unnecessary and wanton infliction of pain.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). "The core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995 (1992). To prevail on an Eighth Amendment excessive force claim, Plaintiff must satisfy both an objective and a subjective component. *Id.* Specifically, Plaintiff "must show that (1) the [D]efendants acted with a 'sufficiently culpable state of mind,' and (2) the alleged wrongdoing was objectively of such a harmful nature as to establish a constitutional violation." *Johnson v. Perry*, 106 F. App'x 467, 469 (2004) (quoting *Hudson*, 503 U.S. at 5).

Under the subjective component, the inquiry focuses on the state of the mind of the prison officials. *Williams*, 631 F.3d at 383. To determine whether the use of force is objectively reasonable or, instead, wanton and malicious, courts balance several factors: "the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison official, and any efforts made to temper the severity of the forceful response." *Richmond v. Settles*, 450 F. App'x 448, 453 (6th Cir. 2011) (citing *Whitley v. Albers*, 475 U.S. 312, 321, 106 S. Ct. 1078 (1986)).

Under the objective component, the pain inflicted must be "sufficiently serious." *Williams*, 631 F.3d at 383. This inquiry is "contextual and responsive to 'contemporary standards of decency.'" *Hudson,* 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). As the Supreme Court has explained:

9

> [N]ot every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.

*Wilkins v. Gaddy*, 559 U.S. 34, 37-38, 130 S. Ct. 1175 (2010).

In this case, Plaintiff alleges that Defendants used excessive force both before and after he was handcuffed. Plaintiff failed to demonstrate that Defendants acted with the requisite state of mind and objectively unreasonable as to any alleged injury arising out of circumstances prior to Plaintiff being handcuffed. It is undisputed that the circumstances leading directly up to the alleged incident involved Plaintiff's refusal to go into his cell, despite being ordered to do so. (Doc. #76, *PageID* #458; Doc. #86, *PageID* #515). Further, it is routine procedure for an inmate to be escorted back into their cell upon their refusal to do so. (Doc. #76, *PageID* #458). This demonstrates a "good-faith effort to maintain or restore discipline," rather than a malicious or sadistic intent. *Johnson*, 106 F. App'x at 469 (quoting *Hudson*, 503 U.S. at 5).

The Sixth Circuit has found a failure to establish excessive force claims in similar circumstances. *Jennings v. Peiffer*, 110 F. App'x 643, 644-46 (6th Cir. 2004) (no excessive force claim when c/o's sprayed chemical agents on inmate who refused to remove shoes as ordered); *Davis v. Agosto*, 89 F. App'x 523, 526 (6th Cir. 2004) (no excessive force claim when c/o's used mace on inmate who refused to present his hands so that he could be handcuffed); *Siggers v. Renner*, 37 F. App'x 138, 140 (6th Cir. 2002) (no excessive force claim when c/o's used pepper spray on inmate who refused to leave strip cage). No reasonable jury would conclude that Plaintiff did not initiate the confrontation and that any injuries he sustained prior to being handcuffed

10

demonstrate a malicious and sadistic application of force by the Defendants in response to that confrontation.

Additionally, Plaintiff failed to establish a record sufficient to raise a genuine issue of material fact as to whether Defendant Wade acted objectively unreasonable with the requisite state of mind as to any alleged injury arising out of circumstances after Plaintiff was handcuffed.  There is insufficient evidence in the record to support the notion that Defendant Wade used more than *de minimis* force.  In fact, in his only verified declaration, Plaintiff did not allege any injury was caused by Defendant Wade. (Doc. #86, *PageID* #s 513-15).  The Sixth Circuit has found a failure to establish an excessive force claim when presented with more evidence than provided here. *Lockett v. Suardini*, 526 F.3d 866, 874-76 (6th Cir. 2008) (finding summary judgment appropriate for plaintiff's excessive force claim where plaintiff alleged that he was attacked by guards with only enough force to almost break his eyeglasses and where plaintiff otherwise suffered only minor lacerations and cuts from the guards' activities); *Dallas v. Chippewa Corr. Fac.*, No. 20-1941, 2022 U.S. App. LEXIS 5381, at *14 (6th Cir. Mar. 1, 2022) (granting summary judgment in favor of c/o's when inmate presented medical evidence of bruising and abrasions but failed to show that the c/o's caused the injuries).  Accordingly, Defendant Wade is entitled to summary judgment on this issue.

Similarly, Plaintiff failed to establish a record sufficient to raise a genuine issue of material fact as to whether Defendant Tannreuther acted objectively unreasonable with the requisite state of mind as to any alleged injury arising out of circumstances after Plaintiff was handcuffed.  In his affidavit, Plaintiff alleges, "On April 24th 2020 at about 1:20 PM I was physically assaulted while handcuffed, deputy Kevin Wade and deputy Steven Tannreuther used excessive force against me and left me injured and [traumatized] …." (Doc. #86, *PageID* #513).  Further, Plaintiff states, "I

11

still have an enormous knot on the right [side] of my head from being hit with an object by deputy Steven Tannreuther." *Id.*

In contrast, Defendant Wade stated in his responses to Plaintiff's interrogatories and requests for admission that Plaintiff disobeyed orders to go into his assigned cell and was very hostile and aggressive. (Doc. #76, *PageID* #s 458-59). Furthermore, according to Defendant Wade, the "only force used was to escort the Plaintiff into his cell." *Id.* at 458. Finally, Defendant Wade denies that Plaintiff was assaulted or injured. *Id.* at 459.

A litigant must identify specific facts supported by admissible evidence and cannot rely on conclusory statements. *Haines*, 404 U.S. at 520; *Schlueter v. S. Energy Homes, Inc.*, 252 F. App'x 7, 9-10 (6th Cir. 2007). Here, Plaintiff's description is conclusory; he does not assert that he was cooperating with the deputies when Defendant Tannreuther allegedly hit him with an object, nor does he describe the specific circumstances surrounding the alleged assault. Moreover, Plaintiff does not explain the extent of his injuries, other than asserting that he had a "knot" on his head. *See White v. Erdos*, No. 21-3154, 2022 U.S. App. LEXIS 2492, at *1-3, *6. (6th Cir. Jan. 26, 2022) (no excessive force claim when c/o's threw inmate into his cell "giving him a 'knot' on his head" who failed to obey direct orders); *Richmond v. Settles*, 450 F. App'x 448, 453 (6th Cir. 2011) (finding district court properly granted the defendant's motion for summary judgment where the plaintiff did not explain the extent of his injuries from the alleged assault other than to say that he was caused "pain, injur[i]es."). In sum, Plaintiff has failed to identify specific facts supported by admissible evidence to support his claims.

Moreover, the Sixth Circuit "has held that 'in the prison context, good faith use of physical force may be necessary to maintain prison security and discipline.'" *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (quoting *Williams v. Browman,* 981 F.2d 901, 905 (6th Cir. 1992)).

12

Plaintiff has not provided any evidence that Defendant Tannreuther utilized more force than necessary to escort him to his cell. In other words, Plaintiff has not shown that Defendant Tannreuther acted "'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Richmond*, 450 F. App'x at 453 (quoting *Hudson,* 503 U.S. at 8). Accordingly, Defendant Tannreuther is entitled to summary judgment on Plaintiff's excessive force claim.

### C. Deliberate Indifference to Medical Need

Plaintiff brings an Eighth Amendment deliberate indifference claim against Defendant Murrell. Defendants contend that Plaintiff has not developed any record evidence demonstrating that he is entitled to relief under this claim.

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration.' But mere failure to provide adequate medical care to a prisoner will not violate the Eighth Amendment." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S. Ct. 285 (1976)). To establish a violation of his Eighth Amendment right resulting from a denial of medical care, Plaintiff must show that prison officials acted with "deliberate indifference to [his] serious medical needs." *Estelle,* 429 U.S. at 104; *Brooks v. Celeste,* 39 F.3d 125, 127 (6th Cir. 1994). A constitutional claim for denial of medical care has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994); *Napier v. Madison Cnty.,* 238 F.3d 739, 742 (6th Cir. 2001).

The objective component requires the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer,* 511 U.S. at 834; *Estelle*, 429 U.S. at 104). A medical need is "sufficiently serious" if it either "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would

13

easily recognize the necessity for a doctor's attention." *Gunther v. Castineta,* 561 F. App'x 497, 499 (6th Cir. 2014) (quoting *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008)). When an inmate has a medical need that has been diagnosed by a physician as mandating treatment, "the plaintiff can establish the objective component by showing that the prison failed to provide treatment, *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)), or that it provided treatment 'so cursory as to amount to no treatment at all[.]'" *Rhinehart*, 894 F.3d at 737 (quoting *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 551 (6th Cir. 2009)). However, when an inmate has received ongoing treatment for his condition and claims that the treatment was inadequate, the objective component requires a showing of care "'so grossly incompetent' or so grossly 'inadequate' as to 'shock the conscience' or 'be intolerable to fundamental fairness.'" *Phillips v. Tangilag*, 14 F.4th 524, 534-35 (6th Cir. 2021) (quoting *Rhinehart*, 894 F.3d at 737). "The plaintiff must present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment." *Rhinehart*, 894 F.3d at 737. *See also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("If the plaintiff's claim, however, is based on the prison's failure to treat a condition adequately . . . the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." (internal quotation marks and citation omitted)).

The subjective component requires an inmate to show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Farmer,* 511 U.S. at 834. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Gunther*, 561 F. App'x at 500 (quoting *Harrison*, 539 F.3d at 518). "Knowledge of the asserted serious needs or of circumstances

14

clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cnty. Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994). In sum, to prove the subjective component, the plaintiff must show that the official: (a) subjectively knew of a risk to the prisoner's health: (b) drew the inference that a substantial risk of harm to the prisoner existed; and (c) consciously disregarded that risk. *Farmer*, 511 U.S. at 837.

Plaintiff has failed to provide any evidence in a verified or sworn document that, at the time he requested medical treatment, he suffered from a sufficiently serious injury. There is no evidence that the injury was diagnosed by a physician or was one that a layperson would recognize required medical attention. In fact, Plaintiff's declaration does not even identify whom he allegedly sought medical treatment from or the specific nature of his request. (Doc #86, *PageID* #513). While Plaintiff later stated that he "still [has] an enormous knot," there is no indication that this knot was present at the time of his alleged request for treatment. *Id*. Accordingly, Defendant Murrell is entitled to summary judgment on this issue.

### D. Supervisory Liability

To the extent that Plaintiff brings an Eighth Amendment supervisory liability claim against Defendant Murrell, Defendants contend that Plaintiff has not developed any record evidence demonstrating that he is entitled to relief under this claim.

"Supervisory liability comprises [of] two concepts … : active involvement by the supervisor and causation." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021). "[T]o succeed on a supervisory liability claim, [a plaintiff] must show that 'a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). However, a supervisor cannot be liable

for a subordinate who violated the plaintiff's constitutional right simply for being their supervisor. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016); *Hays v. Jefferson Cnty.*, 668 F.2d 869, 873-74 (6th Cir. 1982) (A "mere failure to act (even) in the face of a statistical pattern of incidents of misconduct" is not sufficient to confer liability (internal quotations omitted)).

"There also must be a 'causal connection' between the defendant's 'active unconstitutional behavior' and the plaintiff's injuries." *Crawford*, 15 F.4th at 761-62 (quoting *Peatross*, 818 F.3d at 242). This standard requires both causation in fact and proximate causation. *Id.* "Cause in fact is typically assessed using the 'but for' test, which requires us to imagine whether the harm would have occurred if the defendant had behaved other than [she] did." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007). Proximate causation requires the supervisor's active conduct to have been "reasonably expected to give rise to just the sort of injuries that occurred." *Peatross*, 818 F.3d at 244 (quoting *Campbell v. City of Springboro*, 700 F.3d 779, 790 (6th Cir. 2012)).

Plaintiff failed to sufficiently allege a causal connection between Defendant Murrell's behavior and his injuries. Plaintiff does not allege any specific conduct by Defendant Murrell leading up to the injury that would establish a causal link. Without identifying any prior actions by Defendant Murrell that would have led to the harm, Plaintiff's claim lacks the necessary factual foundation to establish cause in fact, as courts require allegations demonstrating that the harm would not have occurred but for Defendant's conduct. *Powers*, 501 F.3d at 608. Furthermore, because Plaintiff fails to describe any prior conduct that could have reasonably been expected to give rise to his alleged injuries, he cannot meet the proximate causation requirement. *Peatross*, 818 F.3d at 236, 244 (finding that plaintiff sufficiently alleged facts supporting a supervisory claim after a police shooting resulted in a death because plaintiff alleged that the director of the police

16

department "was involved at least in part in creating and enforcing all department policies; … did not punish officer misconduct, including the use of excessive force; … failed to take action in the face of the growing use of excessive force by officers and admonishment from the Mayor on the issue; and … 'rubber stamped' officer misconduct"); *Campbell*, 700 F.3d at 782, 790 (finding that plaintiff sufficiently alleged facts supporting a supervisory claim after plaintiff was attacked by a police dog because plaintiff alleged that the "police chief allowed the dog into the field even after his training had lapsed; he never required appropriate supervision of the canine unit and essentially allowed it to run itself; he failed to establish and publish an official K-9 unit policy; and he was seemingly oblivious to the increasing frequency of dog-bite incidents involving the dog that ultimately injured the plaintiffs." (internal citations omitted)).

Because Plaintiff failed to sufficiently allege a causal connection between Defendant Murrell's behavior and his injuries, this Court need not decide whether there are sufficient facts to show Defendant Murrell knowingly acquiesced in the alleged unconstitutional conduct. Accordingly, Defendant Murrell is entitled to summary judgment on this issue.

### E. Nurse Jane Doe

Plaintiff asserts that Defendant Nurse Jane Doe denied him medical treatment for his injuries following the incident. (Doc. #51, *PageID* #s 358-59).

Plaintiff has not identified Nurse Jane Doe. He has neither served Nurse Jane Doe nor explained his failure to do so. Consequently, "[a]n appropriate disposition of the claims against the unnamed defendants is an order dismissing them without prejudice, so that Plaintiff's ability to bring an action within the limitations period is preserved, should he later learn their identities." *Dittmer v. Corizon Health, Inc.*, No. 20-CV-12147, 2021 WL 243009, at *12 (E.D. Mich. Jan. 25, 2021) (quoting *Winburn v. Davis*, No. 08-14996, 2009 WL 3004555, at *8 (E.D. Mich. Sept. 16,

2009) (internal quotation marks omitted); (citing *McPherson v. Caruso*, No. 2:09-CV-11766, 2010 WL 846856, at *6 (E.D. Mich. Mar. 5, 2010) (dismissing without prejudice prisoner's § 1983 claims against John Doe defendants)).

Accordingly, the undersigned **RECOMMENDS** dismissing Plaintiff's claim against Nurse Jane Doe without prejudice.

## IV. Conclusion

For all the foregoing reasons, the undersigned **RECOMMENDS** that:

1. Defendants Kevin Wade, Shenessa Murrell, and Steven Tannreuther's Motion for Summary Judgment (Doc. #94) be **GRANTED**;

2. Plaintiff's claim against Nurse Jane Doe be **DISMISSED** without prejudice;

3. Plaintiff's Request to Stay the Proceedings (Doc. #116) be **DENIED**; and

4. This case be **TERMINATED** on the Court's docket.

July 14, 2025

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).